Good morning. May it please the Court. I'm Chelsea Wilson and I represent the appellant Mr. Jeffrey Winder. Green County deputies entered Mr. Winder's motel room and they searched a bag that he'd left there for the day without a warrant. And the district court refused to suppress the fruits of that search because it reasoned that Mr. Winder had been ejected from the motel at the time of the repeated entries into the room and that there was no need for a warrant to search the bag because the officers had probable cause for that search. And both of those conclusions were erroneous. I'll start as I did in the briefing with ejection. The district court concluded that deciding to eject someone is sufficient to eject someone under the Missouri statute. It concluded that the moment that Mr. McCullough, the hotel owner, Mr. Winder was effectively ejected. And that conclusion is incorrect. You need some external action in order to eject someone. And there are two reasons that you need some external action. The first one is the statutory language, the plain meaning of the word eject. When this Court analyzes statutes, it gives words their plain and ordinary meaning. And the plain meaning of the word eject is to expel, forcibly throw out. It has some active component to it. Terminating a contract in one's mind, unilaterally voiding it, is not the same as ejecting someone if the legislature had meant that you can terminate the contract, that you can void the contract. It could have written that in the statute, but it didn't. The second reason that you need some external action and perhaps a more important reason is that without some external action, those officers have no reason to believe that this situation is any different than the situation in the Supreme Court's Stoner case. Because otherwise they have no reason to believe that this is anything other than a motel manager inviting them into a citizen's room to investigate crime. So they need some objective reason to believe that this is an ejected person, that this room is fair game for them to enter. So you need some active component on the part of the manager so that they believe this person has been ejected. Now, on appeal, the government has pointed to a sentence in the warrant affidavit that they say is the evidence that the officers had reason to believe Mr. Winder had been ejected. That is, if they discover illegal activity, the contract is terminated. The problem is that that's never mentioned below. It's in the record because the warrant affidavit is an exhibit at the suppression hearing, but no questions are asked about it at the suppression hearing. Mr. McCullough has never asked who he told about this, whether it was the responding deputies or the warrant affidavit who came later. He's not asked if he told the responding deputies that, whether they were told that before they went in or after. None of the deputies who testified are asked about this. There's no development about this sentence. And so the government insists it means one thing, but it's not actually developed below that that's what that means. The sentence can't do the work that they want it to do on appeal now. So on the record that was actually made, the government has failed to prove that Does it matter here in contrast to Stoner that it was the hotel manager that entered under the agreement and discovered the drugs as opposed to the police doing some search? So your honor, I don't think that the, so the hotel manager can enter to do his cleaning duties, obviously. Stoner tells us that. The officers though cannot enter unless they believe Mr. Winder has been ejected. They cannot enter unless And you're saying that the invitation of the hotel manager and the conversation between the hotel manager and the officers didn't supply enough evidence that an ejectment had occurred? Correct. If he did not tell them about this policy prior to their entry, then no. That's not enough. They need some reason to believe Mr. Winder has been ejected before they go in the room. Because otherwise, all they think they're doing is investigating crime. And you don't get to do that under Stoner. You don't just get to go into private citizens' motel rooms at the invitation of the motel to investigate crime. If the motel tells you we've ejected these people, we'd like you to come in, that's a different matter. Well, why isn't it implicit? In other words, the hotel manager, I think, generally doesn't have the right to invite third parties into someone's room unless the hotel manager has asserted control over that room. So why wouldn't it be implicit just the mere fact that he invites the law enforcement officers into that room? Why wouldn't that be sufficient to show that he's asserted control over that and therefore ejected? Sure. I think if that were the case, then all of this Court's cases analyzing this issue would have been much simpler. This Court has never found that that's sufficient. It has always looked beyond that. In all of the cases, it has required asking the police officers to help eject these folks, handing the keys over to help eject them. There's always been some action consistent with ejection. It has never been consistent or never been sufficient that the manager has simply... Of course, I bet most of those cases are when the occupant is still occupying the room. Most of them have been, yes, Your Honor. Most of them, the occupant's still been there. That's correct. I wonder if it's different, and since in this case he wasn't there... I still think that you need, that the officers need some reason to believe that they have a right to be entering that room. Did the defendant ever return to the hotel room? He did a few hours later after the warrant had been executed, yes, Your Honor. They tried to return to the hotel room. By that point, officers had executed the warrant. After the warrant was executed, that's when the manager finally rekeys the lock to the room. And so they go, they try to enter into the room. The lock doesn't, or the key doesn't work. They go to the... So there's no question that an ejectment had occurred by the time he had returned? Yes, Your Honor. But the question is whether there was an ejectment before the officers entered. Correct. Correct, Your Honor. The government maintains that even, well, I'll start in a different place. Even if Mr. Winder was ejected, he still maintained a privacy interest in his rights, and it's not a situation where he'd abandoned his property. The government maintains, though, that when you are ejected from a motel, you not only lose your right of privacy in the motel room itself, you also lose your right of privacy in all of your belongings that are in the motel if they are not in a locked container. And that is a troubling position to take, and it's not actually supported by the law that they cite to. They cite to a couple of out-of-circuit cases. One is Allen, which is a Sixth Circuit case. In Allen, the items that were found were marijuana that is in plain view, so that's not actually on point. And then what's described as what appears to be the butt of a pistol in a drawer. It's not clear from the opinion whether that drawer is already open and the pistol is in plain view, or whether the officers have to open the drawer. But even if they open the cocaine in Rambo, that's between the mattresses, because the drawer is going to be hotel property. That's going to be hotel furniture or fixture. So I don't think that Allen holds that you lose your privacy interest in your own personal property in the way that they state that it does. The other case is Ramey, which is a Second Circuit case. And in that case, Mr. Ramey had overstayed his rental and owed the hotel money because he had overstayed. And in New York, there was a lien holder statute, and so the hotel had a lien on his property that he had left there. And so then the hotel consented to a search not only of the room, but of the luggage that he'd left. And the Second Circuit held that he lost his right of privacy in both the room and any articles of which the hotel had lawfully taken possession. So the lien holder statute was a very important component of that holding. It did not hold that you just magically lose your right of privacy when you are ejected from a hotel room. Could lien apply in a factionary like this? I don't believe that lien applies in this case, Your Honor, for a couple of reasons. One, I don't think that any of these violations is particularly close to the line. The entries into the room, I think, are rather clear violations of stoner, and stoner has been established law for five decades or more. And then it's been clear law for quite some time that you need a warrant to search luggage. Contrary to the District Court's conclusion, there's no general luggage exception to the warrant requirement. Probable cause is not sufficient to just search someone's luggage. We issue warrants based on probable cause. So I think those are not close to the line. I also think that the number of violations, the repeated entries into the room, followed by the search, weighs against lien applying. And then finally, the subjective testimony from Corporal Smith, I think, counsels against applying lien. So Corporal Smith is given several opportunities to kind of try to shore up these entries. The prosecutor tries to lead him at one point and give him the opportunity to say that they would have gone into this room regardless to see if other people were in there. She says, you know, even though Mr. McCullough told you no one was in there, you guys would have gone in there regardless, right? And he says, at that time, yes, because he had told us what item was inside that room. So he's not really picking up what she's trying to lead him into. He's telling her, yeah, we would have gone in there. We knew what he told us was in there. He's asked later, why did you go into that room initially? Was it to look to see if somebody else was in there? And he says, no, we went into the room because the manager had told us there was a bag that he believed had methamphetamine in it. And a few lines later, he's asked, and you wanted to go in to see if there was a bag of methamphetamine in the room, right? And he says, yes. So these are not officers who are confused about the law. The United States argues that this is a situation where they just don't know some esoteric requirement of the ejection statute. That's not the case. From their vantage point, they, on the record that we have, they have no indication they're allowed to be going into that room. They have no indication that he's actually been ejected. But it's not a subject of inquiry. It's an object of inquiry, right? Yes, Your Honor. Yes, Your Honor. I think just the totality of the circumstances weighs against it. Assuming you're wrong on the eviction question and the officers are lawfully there, can't they search the bag pursuant to the Plainview Doctrine? No, Your Honor. The government did not prove Plainview in this case. So not even the district court was willing to rely on Plainview in the case. So the magistrate judge made a Plainview finding. The district court did not actually rely on that finding in adopting their recommendation. So the government actually needed to call Sgt. Long to prove up Plainview. I went into some depth in both my opening brief and my reply brief about why they failed to prove that. Sgt. Long, it turns out, is the only one who saw that bag in its initial state and whether it was actually open when they came in. Corporal Smith testified he didn't have any memory of whether it was open or closed when they initially came in because he went on back to the bathroom to clear the room. And by the time he came back, Sgt. Long was already in that bag examining it. And then Deputy Whitcomb, the other deputy, didn't come in with them initially. She came in later with the drug dog. So the government simply failed to prove up Plainview in this case. So I don't think they get there through Plainview either. I'll reserve the remainder of my time, if that's all right. Thank you. Thank you, Ms. Wilson. Mr. Casey? May it please the Court, Brian Casey on behalf of the United States. This is a case where I think a fairly simple fact pattern has accrued a lot of law, a lot of cases, and there's a lot of forking paths that have come off of it. And I think it's one of these cases where sometimes it's best to just go back to the touchstone of the Fourth Amendment and that's reasonableness. And in this case, a hotel owner rents a room to someone and he tells them, if there's anything illegal, you're out of here. He then later lawfully goes into the room. District Court found it was a private search. That's something that is not contested on appeal. And he sees that the room wasn't slept in, the sink wasn't used, the shower wasn't used. The only thing disturbed in the room is a cigarette butt in the ashtray and a bed is off the frame. And for reasons that he explains about in the past having people stash things in rooms to come back to later, he goes and looks. Well, was there something in there? And he finds a bag of meth. At that point, this owner knows that he can eject that person. He told him, I'll eject him if I find something illegal. And he knows he can eject him if he finds something illegal. And he immediately calls 911. Well, what action or do we know anything in the law that would require a certain specific action of the manager to effect an ejection? What constitutes the... Well, Your Honor, I think in this case, the thing that is completely overlooked in the defendant's argument is the manager did do something. He immediately called 911. The Missouri statute says you may eject and contact law enforcement. The manager tells himself, this guy's out of here, and I call law enforcement. He does exactly what he needed to do. What sets this case apart... Does he communicate to law enforcement, I have ejected that person from room X? He does, but when he does is admittedly unclear. But he doesn't have to, because he has the authority. He has the authority to eject the person. Everything he does from that moment is consistent with an ejection. To keep saying, well, he didn't do anything until he changed the key to the locks, that's entirely not true. He calls law enforcement. He talks to law enforcement. He lets law enforcement in the room, which everyone would have known he didn't have authority to do had there not been an ejection. He lets them in the room. He gives them the key. He lets them have access as long as he knows that they're sitting on the room. He said no one's going to come and go from the room because he saw law enforcement there. All of the officers said no one's going to come and go from this room because law enforcement was there. The defendant's not getting back into that room. It's only when law enforcement leaves, or the manager believes they leave, they're actually restaged to a different part of the parking lot. At that point, the manager then immediately goes down and changes the lock. And I think one thing that's kind of lost about, well, he could have changed the lock earlier. We kind of think about, a lot of us go to hotel rooms where it's just about sitting at the front desk, typing in the key, and you can change the code. This was an older building, an older facility, and this was actually required physically changing the lock. And so the manager gave the cops access to the room. There's some suggestion in the transcript he actually gave them the key to the room. When they were done with it, that's when he went and keyed the lock. And that was an entirely reasonable thing to do. So his actions are consistent with ejection. It is not the case that he didn't do anything and didn't communicate anything. He did exactly what he would have done in order to not allow the defendant access back to that room at the point he detected the illegal activity. So he had actual authority. And this argument that, as far as I can tell, I will stand to be corrected, but as far as I can tell is a new argument in the defendant's reply brief that the government, that the officers had to have been told about the ejectment prior, when the manager had actual authority, he was able to consent and the officers did not have to be told prior. But in any event, I think his behavior was such that, and this is going to Judge Fender's questions earlier, he very much, to the officer's perspective, had apparent authority. Now, the warrant affidavit is phrased such that he told the officers before they entered that he ejected the person. He, the manager's testimony is he doesn't remember what he said to the officers. The officer that spoke to him that did testify, one did, one did not, the one that did testify, the corporal, just doesn't say anything about it, but also wasn't asked a question about it because this wasn't an issue below. The issue of whether the officers knew before or knew of the ejection before or after they entered was not litigated below. Again, I think it comes up the first time in the reply brief. But that warrant affidavit does make it sound like the officers knew before they made the initial entry. But even if we assume that they didn't, the circumstances were such that it would have been reasonable for the officers to assume that they, that this manager had authority to let him in. They understood that they couldn't just enter a hotel room on, I mean, they're experienced officers, they both talked about their experience. In response to my question along those lines, Ms. Wilson interestingly suggested that if that's so, aren't you negating all the other prior cases where you said you can't just bring in law enforcement to do an investigation? Not at all. In fact, it's entirely consistent with this Court's cases, and in particular the Peoples case and the Malsbarger case. I think I have that right. I believe Malsbarger. In those cases, the Court holds that the ejectment occurs once the hotel contacted law enforcement. It wasn't the case that the ejection occurred once law enforcement went to the room and removed the parties. It was when the hotel told law enforcement its intent for the parties to be removed. So it's that act of telling law enforcement, I've got control now, is what was enough for law enforcement to have the authority to then enter the facility. And here it was, if not stated, which it may have been, certainly implicit in his behavior that he told law enforcement, no, I've got control of this room now. It's reverted back to me. And in that context, I think the cases are entirely consistent. Here, it's an interesting wrinkle, and I think an interesting argument, kind of an opportunistic argument to say, well, how can you eject someone that wasn't there? And that's really what it boils down to. And it's clearly the case that you can do that, that a hotel owner can do that. And I don't think it's really even reasonable to think that the officers wouldn't think that someone couldn't do that. Under this context, the hotel owner both had authority and the officers would have viewed him as having apparent authority, and that's why they acted the way they did. At that point, the officers, they have access. The access to the room is turned over to the officers until they leave. They have access to the room. Is that an independent Fourth Amendment space? So if the room is one Fourth Amendment space where the defendant no longer had a reasonable expectation of privacy because of his ejectment, now is there an independent Fourth Amendment space in the backpack? And again, the answer to that really is pretty simple. The manager testified clearly. I saw the backpack. I took it out. I opened the flap, and I saw drugs inside. At that point, the officers had the authority to go up to the extent of that private search. So whether or not the flap had folded back or whether or not the first officer had folded the flap back when the second officer came in and set up his plain view, it was just really immaterial because the officers had the authority to pull the flap back and look disagree with the defendant's account of how the district court handled plain view. The magistrate judge found that the drugs in the bag were in plain view, made the factual findings about the bag being open, which justified that. Those factual findings, I don't think were challenged on appeal in any event, are not clearly erroneous. The district court in its later order that said, well, I'm not going to touch plain view, that order also says nothing in my order undermines what the magistrate R&R said. So it fully adopted the R&R and then said, I'm going to say some supplemental things with regard to the objections. But Ms. Wilson at least argued that no one testified that the bag was open and there was something in plain view, something incriminating. Corporal Smith testified to that. What Corporal Smith doesn't testify to, so what happens is Smith and Long enter the room together. Long goes directly to the bag, Smith goes directly to the bathroom to see if anybody's hiding in the shower or something like that. Smith then walks back from the bathroom and joins Long at the bag, and the bag is open. Smith can't say when I walked by originally it was open, I looked at it when I got back. His description of the bag, where it is located, is exactly the same as the manager's description about where he left it. Just at the foot of the bed, on the floor. The manager wasn't sure if he put it on the bed or the floor, thought it was the floor. Wasn't sure if he closed it or not, just didn't know either way. So by the time the corporal comes back to the bag, it's where the manager said it was and it was open. The district court concluded... What did somebody say? I could then see... At that point, I could see the gun, yes. And the district court concluded that was plain view. Both below and on appeal, Mr. Rwinder is contesting whether or not the district court could have made that finding because it's possible the sergeant who went straight to the bag could have opened it in the meantime. But the court's finding was quite reasonable. And I don't think it could be found to be clearly erroneous. And so the court made that finding that both the drugs and the butt of the gun were found. At that point, I don't think Mr. Rwinder is contesting that the officers acted reasonably in securing the gun. So they do manipulate the package to the extent that they take the gun out and secure it. I don't think anyone's accusing that as being unreasonable. And it appears they probably do move the backpack because when the drug dog comes in, it's in a different location, according to their testimony. But at that point, again, the officers have more than probable cause to seize the bag, but I would have been as a caution they still go forward with the warrant. And in these circumstances, I again just simply disagree that this is even close to the line. Mr. Rwinder's argument is that this is so far out of the line Leon wouldn't apply. I think to even get to the line, we have to ask a lot of counterintuitive questions about what the officers would have thought, what the hotel manager was able to do, whether or not the hotel manager should have just taken the bag out himself, or whether he should have keep the lock first. A lot of questions that are completely unanswered. And an independent magistrate had full information about what happened. The warrant says, it says that the hotel manager communicated to the rentee that if you do anything illegal, you would be out. That the hotel manager then found the drugs, that the hotel manager then let the police in. It's a short factual basis, but it gets all the key points. Independent magistrate looked at that. The officers looked at it. One thing I think is key that's lost is that before the officers entered, they actually called their detectives to see, can we go in this hotel room or not? So it wasn't just them acting, we don't have necessarily what that conversation was, but they were thinking about it. They were acting reasonably, and that's what the Fourth Amendment touchstone is here. Independent magistrate knows all of this, offers the warrant, and that warrant is sufficient for the officers to rely on under Leon. If there's no further questions, the government would ask this court to affirm. I'll touch on just a few points that Mr. Casey hit. The government's making an apparent authority argument. Stoner itself said, our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of apparent authority. If we decided every one of these cases where they called the police out to a motel and said, well, he called the police out, so he was showing apparent authority for them to come into the room, we would not have any of these cases. They would be much more straightforward. You can't just decide this case based on the doctrine of apparent authority because he invited them into the room. We also don't just assume that law enforcement officers know and followed the law in every case. So we don't assume that they knew about Stoner and therefore that this was apparent authority and that they did not violate Stoner. We are not arguing that it's impossible to eject someone who is not there. It's absolutely possible to eject someone who isn't there. You cannot eject someone by thinking it in your mind. That's what we're arguing. That's the only thing that we're arguing on that front. What he needed to do was convey that in some way with external action, whether it was speaking it to the officers, handing over a key, doing something, re-keying the lock, whatever it was, it wasn't only thinking in his mind that the contract was null and void. And that's plain language of the statute and this court reviews that issue de novo. The statutory construction issue is reviewed de novo. And the last thing I would point out is I believe what Chief Judge Phillips said in adopting the R&R was that her order was intended to augment not supplant Judge Rush's R&R. Which I think could be taken to mean that she is tweaking the findings and conclusions while not trying to wholly replace them. I don't think it necessarily means that all of his findings and conclusions are left in place. I believe she intended to not rely on the plain view finding. I believe that's why she instead included the probable cause. With that, we would ask that the court reverse. Thank you. Thank you, Ms. Wilson. Thank you also, Mr. Casey. The court appreciates your presence before the court this morning and the argument you've provided to us. We will continue to study the record and render decisions promptly as possible.